UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REGINALD LEWIS

        Petitioner,

                                    CASE NO. 2:12-CV-12369

v.                                JUDGE LAWRENCE P. ZATKOFF
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

RAYMOND BOOKER

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.    *Confrontation Clause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
             a. *Failure to Object to Autopsy Report* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
             b. *Failure to Object to Prejudicial Evidence of Bad Character* . . . . . . . . . . . . . . . . 14
             c. *Failure to Call Additional Alibi Witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             d. *Failure to File Motion to Dismiss Based on Excessive Pre-Arrest Delay* . . . . . . . . . 16
     F.    *Failure to Order a Competency Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     G.    *Verdict Against the Great Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 24
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
     I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Reginald Lewis is a state prisoner, currently confined at the Ryan Correctional Facility in Detroit, Michigan.

2.     On September 29, 2006, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316, following a jury trial in the Wayne County Circuit Court.  On October 20, 2006, he was sentenced to a mandatory term of life imprisonment without possibility of parole.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     ADMISSION OF OUT-OF-COURT STATEMENTS VIOLATED BOTH DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER AND MICHIGAN RULES OF EVIDENCE REQUIRING A NEW TRIAL

II.    MR. LEWIS IS ENTITLED TO A NEW TRIAL WHERE DEFENSE COUNSEL OFFERED INEFFECTIVE ASSISTANCE BY: (1) FAILING TO OBJECT TO EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE AND MICHIGAN RULES OF EVIDENCE; (2) FAILING TO OBJECT TO PREJUDICIAL EVIDENCE OF BAD CHARACTER; (3) FAILING TO CALL ALIBI WITNESSES; (4) FAILING TO FILE MOTION TO DISMISS BASED ON EXCESSIVE PRE-ARREST DELAY IN VIOLATION OF THE US CONSTITUTION AND MICHIGAN COURT RULES

III.   THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN THE TRIAL COURT FAILED TO ORDER A COMPETENCY HEARING FOR THE DEFENDANT WHEN A HEARING WAS REQUESTED BY THE DEFENDANT

IV.    THE GREAT WEIGHT OF THE EVIDENCE PRESENTED BY THE PROSECUTOR WAS INSUFFICIENT TO ESTABLISH BEYOND A

REASONABLE DOUBT THAT THE DEFENDANT, REGINALD LEWIS, WAS GUILTY OF FIRST DEGREE MURDER.

V.      IT WAS ERROR TO DENY DEFENDANT'S MOTION FOR DIRECTED VERDICT AS THERE WAS INSUFFICIENT EVIDENCE AT THE TIME THE MOTION WAS MADE TO CONSTITUTE A CONVICTION

VI.     THE COURT ERRED WHEN IT PERMITTED 911 TAPES TO BE PLAYED THAT HAD NO RELEVANT VALUE AND WAS MORE PREJUDICIAL THEN IT WAS PROBATIVE

The court of appeals found no merit to petitioner's claims and affirmed his conviction and sentence. *See People v. Lewis*, No. 274508, 2008 WL 1733718, at *1, *9-*11 (Mich. Ct. App. Apr. 15, 2008) (per curiam) ("*Lewis I*").

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court vacated in part the judgment of the court of appeals for reconsideration of the defendant's Confrontation Clause, sufficiency of the evidence, and ineffective assistance issues in light of *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009). Appeal was denied in all other respects. *See People v. Lewis*, 485 Mich. 878, 772 N.W.2d 47 (2009) ("*Lewis II"*).

5.      On remand, the Court of Appeals again found Petitioner's claims without merit. *See People v. Lewis (On Remand),* 287 Mich. App. 356, 366, 788 N.W.2d 461, 468 (2010) ("*Lewis III"*).

6.      The Michigan Supreme Court affirmed the result reached by the court of appeals although it did not agree with the Court of Appeals' reasoning. The Michigan Supreme Court found that the trial court had erred in allowing the autopsy report into evidence because neither of the doctors who performed the autopsy were available for trial, which violated petitioner's right to confront his accuser under the Sixth Amendment of the Constitution. Although the court found that the autopsy report should not have been allowed into evidence, it concluded that it was a harmless error and affirmed the court of appeals' affirmation of petitioner's conviction.  *See People v. Lewis,*

3

490 Mich. 921, 806 N.W.2d 295 (2011).

   7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 31, 2012.  As grounds for the writ of habeas corpus, he raises the first four claims that he raised on appeal:

  I. ADMISSION OF OUT-OF-COURT STATEMENTS VIOLATED BOTH DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER AND MICHIGAN RULES OF EVIDENCE REQUIRING A NEW TRIAL

  II. MR. LEWIS IS ENTITLED TO A NEW TRIAL WHERE DEFENSE COUNSEL OFFERED INEFFECTIVE ASSISTANCE BY: (1) FAILING TO OBJECT TO EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE AND MICHIGAN RULES OF EVIDENCE; (2) FAILING TO OBJECT TO PREJUDICIAL EVIDENCE OF BAD CHARACTER; (3) FAILING TO CALL ALIBI WITNESSES; (4) FAILING TO FILE MOTION TO DISMISS BASED ON EXCESSIVE PRE-ARREST DELAY IN VIOLATION OF THE US CONSTITUTION AND MICHIGAN COURT RULES

  III. THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN THE TRIAL COURT FAILED TO ORDER A COMPETENCY HEARING FOR THE DEFENDANT WHEN A HEARING WAS REQUESTED BY THE DEFENDANT

  IV. THE GREAT WEIGHT OF THE EVIDENCE PRESENTED BY THE PROSECUTOR WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE DEFENDANT, REGINALD LEWIS, WAS GUILTY OF FIRST DEGREE MURDER.

   8. Respondent filed an answer on December 10, 2012.  He contends that petitioner is not entitled to habeas relief.

B. *Factual Background Underlying Petitioner's Conviction*

   Petitioner was convicted of the murder of his longtime girlfriend, Tomeka Cook, on September, 29, 2006. He was sentenced to life in prison on October 20, 2006.

Petitioner and Tomeka had dated for fifteen or sixteen years before her murder. Petitioner had spent time in jail and had been released about two weeks before the murder. The victim was said to have had a gambling problem. Letters written from petitioner to Tomeka while he was in jail show that her gambling was a source of contention in their relationship. In the letters he wrote to Tomeka, he mentioned that she was spending his money as well as hers and urged her to stop gambling.

On Saturday, February 1, 2003, Tomeka hosted a gambling party. There was testimony that Tomeka was on the telephone arguing with petitioner during the party. Tomeka's cousin testified that she had spoken with her on the telephone several times the day after the party. During one of the calls, Tomeka told her cousin that petitioner had taken her proceeds from the gambling party. During another call she said that things were not going well, and she planned to move out of the house she shared with petitioner. The last time Tomeka's cousin spoke with her was around 3:17 p.m. When she called back around 6:00 or 6:30 p.m., petitioner answered the phone and told her Tomeka was not there.

Petitioner presented several alibi witnesses who claim to have been with petitioner at the time Tomeka was murdered (which had been determined to be either Sunday, February 2, or Monday February 3, 2003). The testimony that alibi witness Kendall Davis gave with regard to petitioner's whereabouts on February 2, was in direct conflict with Tomeka's cousin's testimony. Specifically, Mr. Davis claimed that petitioner was with him at the time Tomeka's cousin claims that petitioner answered the telephone the last time she tried to call her at 6:00 or 6:30 p.m. on February 2, 2003.

Tomeka's body was found in the home that she shared with petitioner on February 4, 2003. A senior forensic biologist with the Detroit Police crime laboratory testified that the

5

deoxyribonucleic acid (DNA) profile she obtained from a swab of blood taken from the back door of the house was consistent with the DNA profile developed from the blood sample taken from petitioner. Although the forensic biologist could not determine how long the blood had been on the door, viewing the evidence in a light most favorable to the prosecution, it tied petitioner to the crime.

The autopsy report provided evidence that the victim was killed intentionally. Dr. Carl Schmidt, who worked as the Chief Medical Examiner with the Wayne Country Medical Examiner's office, but who had not prepared the autopsy report, reviewed the report and provided testimony that, according to the autopsy report, the victim had many stab wounds: five to the face, four to the scalp, two to the neck, one to the right chest, and one to the left upper arm. The victim also had six "defensive wounds" on the backs of her hands. The two doctors who performed the autopsy concluded that the manner of death was homicide, and the cause of death was multiple stab wounds. Based on his review of the photographs, autopsy report, and sketch, Dr. Schmidt agreed.

An arrest warrant was requested in 2004 but was not issued until 2006. Once the arrest warrant was issued, petitioner was picked up and charged with murdering Tomeka.

At the end of a jury trial, petitioner was convicted with the first degree murder of Tomeka Cook and sentenced him to life in prison.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was

7

meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

8

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Confrontation Clause*

In petitioner's first habeas claim, he contends that his Sixth Amendment rights were violated when the two doctors who performed the autopsy report were unavailable to testify at trial, denying him his constitutional right to face his accusers. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Legal Standard*

The introduction of "testimonial" hearsay statements–that is, out of court statements that are the functional equivalent of in-court testimony–violates a defendant's Sixth Amendment right to confront the witness against him, unless the hearsay declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine the witness.  *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004).  Out of court statements that do not amount to testimonial hearsay, however, raise no Confrontation Clause issues.  *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007).  In

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court held that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, constituted testimonial hearsay for Confrontation Clause purposes, and that such a report may not be introduced without the prosecution offering a live witness competent to testify to the truth of the report's statements. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2709 (2011) (discussing *Melendez-Diaz*, 557 U.S. at 310-11). In *Bullcoming* the Court clarified that under *Melendez-Diaz*, the prosecution may not present "surrogate" testimony by an analyst who did not sign the report or observe or perform the tests reflected in the report; rather, "[t]he accused's right is to be confronted with the analyst who made the certification." *Bullcoming*, 131 S. Ct. at 2710.

Confrontation Clause violations are subject to harmless error analysis. *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999). In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court ruled that trial error does not entitle state prisoners to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

    2.    *Analysis*

The admission of the autopsy report without the testimony of the doctors who prepared it was a violation of petitioner's Sixth Amendment right to confront his accuser. *Melendez-Diaz,* 557 U.S. at 351. Although the court erred in admitting the autopsy report, it was nevertheless a harmless error and therefore petitioner is not entitled to habeas relief. Under *Brecht,* the trial court error must have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507

10

U.S. at 637. There was no dispute at trial that the victim was stabbed to death. The autopsy report merely identified the cause of death of the victim. It did not aid in establishing the identity element of the crime, and therefore would not have been outcome determinative at trial. The Michigan Court of Appeals correctly observed that, "There is no dispute that a crime was committed, and the autopsy did not aid in establishing the identity of the perpetrator which was the central issue in this case." *Lewis III,* 287 Mich. App. at 363, 788 N.W.2nd at 467 (internal quotation omitted). Because the admission of the autopsy report did not help to identify petitioner, he cannot show that he was prejudiced by the erroneous admission of the report. The erroneously entered autopsy report did not have a "substantial and injurious effect or influence in determining the jury's verdict", and therefore, petitioner is not entitled to habeas relief on this claim.

E.      *Ineffective Assistance of Counsel*

Petitioner raises several claims that he received ineffective assistance of counsel. Specifically, he contends that counsel was ineffective for (1) failing to object to evidence in violation of the Confrontation Clause and Michigan Rules of Evidence, (2) failing to object to prejudicial evidence of bad character, (3) failing to call alibi witnesses, and (4) failing to file a motion to dismiss based on excessive pre-arrest delay in violation of the Constitution and Michigan court rules. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An

ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

*a. Failure to Object to Autopsy Report*

Petitioner contends that counsel's failure to object to the autopsy report being submitted into evidence at trial was a violation of his constitutional right to face his accusers because neither of the doctors who prepared the autopsy report was available to testify at trial. As discussed above, although counsel may have erred by not objecting to the autopsy report being admitted into evidence, petitioner cannot show "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695. There was no doubt that a crime had been

13

committed and that the victim had been murdered. The autopsy report merely showed that the victim had died from multiple stab wounds. The report was not outcome determinative because it did nothing to connect petitioner to the crime. The identity of the perpetrator was the main issue at trial, not the cause of death.

Further, even if this testimony would be barred under *Melendez-Diaz* and *Bullcoming,* petitioner cannot show that counsel was ineffective for failing to object at the time of trial. Petitioner was tried in 2006, after *Crawford* but before the Supreme Court's decision in *Melendez-Deiz.* It is well established that counsel's performance must be evaluated "as of the time of counsel's conduct," *Strickland,* 466 U.S. at 690, and therefore that counsel cannot be deemed ineffective for failing to anticipate a change in the law. *See Nichols v. United States,* 501 F.3d 542, 545 (6th Cir. 2007); *Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001). At the time of petitioner's trial, the overwhelming majority of courts held that forensic reports did not constitute testimonial hearsay under *Crawford. See Likely v. Ruane,* 681 F. Supp. 2d 107, 110 (D. Mass. 2010); *see also, Melendez-Diaz,* 557 U.S. at 330 (Kennedy, J., dissenting) (noting that the majority's holding was contrary to decision in "at least 35 states and six Federal Courts of Appeals."). In light of the state of the law at the time of petitioner's trial, counsel cannot be deemed ineffective for failing to raise a *Melendez-Diaz* type challenge to the autopsy report being admitted into evidence. *See Hutchins v. Ryan,* CV 07-5796, 2011 WL 7429398, at *33 (Apr. 29, 2011), *magistrate judge's report adopted,* 2012 WL 528145 (C.D. Cal. Feb. 15, 2012); *Moorehouse v. DeCamp,* No. 09-980, 2010 WL 2367499, at *5 (May 21, 2010), *magistrate judge's report adopted*, 2010 WL 2367486 (D. Or. June 10, 2010). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. *Failure to Object to Prejudicial Evidence of Bad Character*

14

Petitioner also contends that counsel was ineffective for failing to object to the prosecution mentioning his incarceration prior to the victim's death. The Michigan Court of Appeals correctly rejected this claim on the grounds that petitioner's prior incarceration was an important part of the circumstantial evidence surrounding the crime. In particular, the letters petitioner wrote to the victim while incarcerated were relevant to his possible motive to commit the crime.

The letters that petitioner wrote to the victim from prison urging the victim to stop gambling were introduced into evidence at trial. To introduce this evidence, it was necessary to talk about how petitioner was incarcerated when the letters were written. Any objection to the prosecution bringing up petitioner's past incarceration would have been fruitless and therefore cannot be considered faulty trial strategy. In order for petitioner to prevail on this claim he would have to establish the necessary factual predicate, i.e., that an objection would have been successful. "Counsel cannot be ineffective for failing to object to what was properly done." *United States v. Sanders,* 404 F.3d 980, 986 (6th Cir. 2005). Consequently, the decision of counsel not to object does not support petitioner's ineffective assistance claim.

Furthermore, the jury was given the instruction that; "You must not convict the defendant here because you think that he is guilty of other bad conduct. All of the evidence must convince you beyond a reasonable doubt that the defendant committed this alleged crime, or you must find him not guilty." (*See* Trial Tr. at 61, 67 9/28/2006). The judge's instructions at trial were clear, and "[j]uries are presumed to follow their instructions." *Richardson v. Marsh,* 481 U.S. 200, 211 (1987).

### c. Failure to Call Additional Alibi Witnesses

Petitioner further argues that counsel was ineffective for not calling two additional alibi witnesses to testify at trial. Specifically, he faults counsel for not calling Joann Coppin and Noel

15

Coppin as witnesses to corroborate the testimony of their son, Kendall Davis.

At trial, Kendall Davis, a longtime friend of petitioner, testified that he was with petitioner from about 12:30 p.m. on Sunday, February 2, 2003, until that evening when he was picked up by another friend. Petitioner contends that Mr. and Mrs. Coppin should have been called to reinforce the testimony of Kendall Davis as to his whereabouts on the day that the victim was murdered. Counsel was asked at the evidentiary hearing why he did not call Joann Coppin as a witness. He explained:

> I felt that Kendall Davis gave me the time line, he was articulate. He was the one who saw Reggie when he first got there, when he left. I think the mother was there but she couldn't account for when he left. She wasn't with him, at every step and every room of the house, and so apparently Mr. Lewis had left her line of vision. So I felt that Kendall could testify as to when he got there, when he left, and what he did when he was there.

See Evid. Hr'g Tr. 6/21/2007, at 19.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland v. Washington, 466 U.S. 668, 688 (1984).* The decision not to call the additional alibi witnesses was not an objectively unreasonable application of *Strickland.* The defense attorney, after talking with Joann Coppin, decided that her added testimony did not provide any information that was not already provided by her son, Kendall Davis. In fact, Davis had allegedly spent the whole day with petitioner and could account for his whereabouts the entire day, whereas Mrs. Coppin could not. Counsel did not think that her additional testimony would help petitioner's case. She could not account for when petitioner arrived or when he left the house and therefore the decision not to use her vague recollection of the day in question at trial cannot be considered to be a deprivation of a substantial defense. As for Davis's stepfather, Noel Coppin, it is not clear if he would have even testified, as he did not testify at the evidentiary hearing.

16

Counsel's decision not to call Noel or Joann Coppin as witnesses was an acceptable trial strategy under the extremely deferential *Strickland* standard and does not merit habeas relief.

### d. Failure to File Motion to Dismiss Based on Excessive Pre-Arrest Delay

The Due Process Clause of the Fifth Amendment provides a defendant limited protection against pre-indictment delay. *United States v. Lovasco,* 431 U.S. 783, 789 (1977). The prosecution of a defendant does not necessarily deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Id.* at 796. The Fifth Amendment provides, in relevant part, that "[n]o person shall... be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The Supreme Court had indicated that, although statutes of limitations provide the "'primary guarantee against bringing overly stale criminal charges,'" where preindictment delay is involved "the Due Process Clause has a limited role to play in protecting against oppressive delay." *Lovasco,* 431 U.S. at 789 (quoting *United States v. Marion*, 404 U.S. 307, 322 (1971)). The Sixth Circuit

> has consistently read *Lovasco* to hold that '[d]ismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage.'

*United State v. Brown*, 959 F.2d 63,66 (6th Cir. 1992) (quoting *United States v. Brown,* 667 F.2d 566, 568 (6th Cir. 1982) (per curiam)) (emphasis and alterations in original).

Petitioner has not shown that if a motion to dismiss due to pre-arrest delay had been filed that there is a reasonable probability that it would have been granted, or that he was in fact prejudiced by the delay. Furthermore, he has not brought forth evidence that the prosecution's reason for the delay was to gain a tactical advantage against him. Accordingly, this claim does not merit habeas relief.

17

F.    *Failure to Order a Competency Hearing*

Petitioner's third habeas claim is that he was denied his due process rights to a fair trial when the trial court failed to order a competency hearing after his counsel had requested one. This Court should conclude that petitioner is not entitled to relief on this claim.

1.    *Legal Standard*

It is well established that "[a] criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). "To be competent to stand trial, a defendant must have 'a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and must possess 'a rational as well as factual understanding of the proceedings against him.'" *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001) (quoting 362 U.S. 402, 402 (1960) (per curiam)). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Godinez*, 509 U.S. at 401 n.12. "Although no 'fixed or immutable' signs create sufficient doubt about competence, pretrial behavior, demeanor during trial, and previous medical opinions regarding competency are relevant considerations." *Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001) (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

As explained by another Judge of this Court,

> Competency claims can raise issues of both substantive and procedural due process. A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts which raised a "bona fide doubt" regarding petitioner's competency to stand trial. *Walker v. Attorney General for the State of Oklahoma*, 167 F.3d 1339, 1343 (10th Cir.1999) (internal citations omitted). A petitioner can make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. A petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and

18

must demonstrate his or her incompetency by a preponderance of the evidence. *Id*. at 1344. To succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "real, substantial, and legitimate doubt" as to his or her competency to stand trial. *Walker*, 167 F.3d at 1347.

*Hastings v. Yukins*, 194 F. Supp. 2d 659, 670-71 (E.D. Mich. 2002) (Cleland, J.). A trial court's

conclusion regarding a defendant's competence is a factual finding. *See Demosthenes v. Baal*, 495

U.S. 731, 735 (1990); *Maggio v. Fulford*, 462 U.S. 111, 117 (1983). It is therefore presumed correct

on habeas review unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

    2.    *Analysis*

The trial judge was permitted to rely in part on his own observations of petitioner in making

a competency determination. *See Maggio*, 462 U.S. at 117; *Bryson v. Ward*, 187 F.3d 1193, 1201

(10th Cir. 1999); *Hastings*, 194 F. Supp. 2d at 671. The only question was whether petitioner was

able to understand the proceedings and assist counsel in presenting his defense.

Petitioner cannot show that he was denied due process by the trial court's failure to order a

competency hearing. Although the Supreme Court has explained the circumstances in which a

competency hearing is required, it has not provided any guidance on the procedures required to be

employed in such a hearing as a matter of federal constitutional law. Rather, the Supreme Court has

held only that, in certain circumstances, a defendant is entitled to "an adequate hearing on his

competence to stand trial." *Pate v. Robinson*, 383 U.S. 375, 387 (1966); *see also*, *Drope v.*

*Missouri*, 420 U.S. 162, 172-73 (1975) (describing *Pate* as requiring an "adequate procedure" for

determining competence). The Supreme Court has never "expressly describe[d] the nature of the

required evidentiary hearing." *Zang v. Peterson*, No. 89-35646, 1990 WL 173753, at *5 (9th Cir.

Nov. 9, 1990). As a matter of statutory law, in federal criminal cases a defendant has the right "to

testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing," 18 U.S.C. § 4247(d).  Nevertheless, even under § 4247(d) it is well established that "[i]n competency hearings, the limitation or expansion of the scope of testimony . . . lie[s] squarely within the trial judge's discretion."  *United States v. Campbell*, 543 F.2d 1333, 1348 (D.C. Cir. 1974).  The decisions of federal courts considering the matter on habeas review suggest that there are no hard-and-fast rules; rather, the question is simply, as stated in *Pate*, whether the procedures employed were adequate to protect the defendant's right not to be tried while incompetent.  *See Wolfe v. Weisner*, 488 F.3d 234, 239 (4th Cir. 2007); *see also*, *Greenfield v. Gunn*, 556 F.2d 935, 937 (9th Cir. 1977) (internal quotation omitted) (habeas relief not appropriate where petitioner failed to show that the procedures employed by the trial court were "wholly inadequate for a proper determination of . . . competency.").

With respect to a procedural competency claim, a hearing must be held where a reasonable judge, faced with the facts before the trial judge, would have a "bona fide doubt" about the defendant's competence.  *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004).  The focus of the inquiry is "on what the trial court did in light of what it knew at the time of the trial or plea hearing." *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir. 1990).  Factors giving rise to a bona fide doubt may include prior medical opinions on his competence to stand trial or plead guilty, his demeanor in court, and his irrational behavior.  *See Drope*, 420 U.S. at 180.

During trial, defense counsel asked for "a forensic" or a mistrial on the second day of trial. *See* Tr. Trans. 9/26/06 at 8-9. Counsel claimed that petitioner had suffered two strokes, could barely walk, and his condition had "deteriorated tremendously" during counsel's involvement in the case. Counsel also claimed that petitioner had made gestures to the jury during trial. The trial judge

concluded that petitioner was "trying to create some sort of record and playing of games." *People v. Lewis,* 2008 WL 1733718, *8-*9. The judge gave petitioner a cursory review and determined that he was competent to stand trial. The trial court observed that although it seemed that petitioner did have some difficulty walking, he had been communicating with his attorney and the court had not observed any other signs of incompetence. *Id.* at *9.

A court's determination of competency is a factual finding entitled to a presumption of correctness, and can only be refuted by clear and convincing evidence. See *Mackey v. Dutton,* 217 F.3d 399, 413 (6th Cir. 2000). The "open-ended standards" and "high threshold" allows state courts a "wide latitude" in determining whether or not to hold a competency hearing. *Cowans v. Bagley,* 639 F.3d 241, 247 (6th Cir. 2011). The trial court concluded that petitioner was trying to play games and create some type or record and that he knew what was going on. The trial court was in the best position to observe petitioner's behavior and evaluate his competence accordingly. There was insufficient evidence on record to show that petitioner was incompetent to stand trial and the Michigan Court of Appeals's denial of relief of this claim falls well within the wide latitude provided it under clearly established federal law.

G.      *Verdict Against the Great Weight of the Evidence*

In petitioner's final habeas claim, he claims that the jury verdict was against the great weight of the evidence presented at trial. This claim should also fail.

1.      *Legal Standard*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA

21

standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson*

standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

2. *Analysis*

Petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence. His claim is not cognizable. It is well established that habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, supra*. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412,

23

435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt. The prosecution brought forth enough evidence so that a reasonable jury could link petitioner to the crime; petitioner's blood was found at the scene of the crime; a witness testified that the victim and petitioner were fighting the night before the murder; there were letters introduced as evidence that petitioner had written to the victim while incarcerated that showed that the victim had a gambling problem that was a source of contention between them; there was evidence that indicated that petitioner may have spent the next few days after the murder constructing an alibi. In light of the evidence presented at trial neither the jury's guilty verdict, nor the Michigan Court of Appeals's decision to uphold the jury verdict were objectionably unreasonable.

Consequently, this Court should deny petitioner's request for habeas relief on this claim.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that

24

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""' *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

25

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  Because it is clear that the erroneous admission of the autopsy report into evidence was not outcome determinative and did not otherwise prejudice petitioner it does not provide a cognizable ground for habeas relief. With respect to petitioner's ineffective assistance of counsel claim, this claim is also without merit. Counsel acted well within the highly deferential standards set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Even if defense counsel made errors, there were none that prejudiced petitioner's defense or potentially changed the outcome of the trial. The resolution of petitioner's third claim regarding the denial of a competency hearing is also not reasonably debatable. Petitioner has not proven by a preponderance of the evidence that he was incompetent to stand trial. On the contrary, he has not brought forth any evidence in support of his incompetence claim other than his behavior during trial which the trial judge addressed after a cursory review. Finally, the jury verdict was supported by sufficient evidence under *Jackson v. Virginia*, 443. U.S. 307 (1979). The evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient so that a trier of fact could have found the elements of the crime beyond a reasonable

doubt. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Dated: June 18, 2013                              s/ Paul J. Komives_____
                                                  PAUL J. KOMIVES
                                                  UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

     I hereby certify that a copy of this Report and Recommendation was served upon Reginald Lewis and Counsel of Record on this date.

Dated: June 18, 2013                              s/ Lisa C. Bartlett_____
                                                  Case Manager